1
2
3
4
5
6
7
8
9            IN THE UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  JOHN M MCKENZIE, et al,                    No C 03-4211  VRW

13          Plaintiffs,                        ORDER

14          v

15  FRESENIUS MEDICAL CARE AG, et al,

16          Defendants.

17  _____/

18

19

20          Fresenius Medical Care AG (Fresenius) and SRC Holding

    Company (SRC) (collectively "defendants") move to dismiss a large

21  portion of plaintiffs' first amended complaint (FAC) and to strike

22  ¶¶46, 47 and 48 of the FAC.  Docs ##48, 58 (Mots Dismiss); Doc #33

23  (FAC).  Plaintiffs oppose defendants' motions.  Docs ##67, 69.  The

24  court heard oral argument on these motions on April 7, 2005.  Based

25  upon the parties' arguments and memoranda and the applicable law,

26  the court GRANTS IN PART defendants' motions to dismiss and DENIES

27  the motion to strike.

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1

**II**

2      In its June 1, 2004, order, the court amply recited the

3 factual allegations contained in plaintiffs' original complaint

4 (which were assumed to be true).  Doc #31.  Plaintiffs include few

5 new allegations in the FAC.  As the parties and the court are

6 familiar with these factual allegations, only the most abridged

7 version need be recited here.

8      On May 15, 1997, plaintiffs' company, Spectra

9 Laboratories, Inc (Spectra) entered into a merger agreement with

10 Fresenius and SRC (the "Agreement").  It is undisputed that events

11 subsequent to the merger did not go as plaintiffs had envisioned.

12 First, defendants never implemented the "Employee Bonus Plan" that

13 was required pursuant to Section 5.10 of the Agreement.  Next, it

14 is undisputed that plaintiffs received no money via the "Contingent

15 Payment Rights" to which they potentially were entitled pursuant to

16 Appendix A of the Agreement.  Plaintiffs assert that their

17 contingent payment rights never came to fruition because defendants

18 (1) failed to use their best efforts to maximize the revenue for

19 the Homecare segment, (2) failed to use their best efforts to

20 maximize revenues for the Diagnostics segment and (3) used a

21 "corporate management fee" in determining monies payable under

22 Appendix A.

23      Alleging defendants' post-merger misfeasance and

24 nonfeasance, plaintiffs filed the original complaint in this case

25 on September 15, 2003.  Doc #1.  Defendants moved to dismiss the

26 entire complaint pursuant to FRCP 12(b)(6), arguing (mainly) that

27 the statute of limitations barred each claim asserted in the

28 complaint.  Doc #21.  On June 1, 2004, the court granted (in large

**2**

United States District Court

For the Northern District of California

1  part) defendants' motion to dismiss.  Doc #31.  The court gave

2  plaintiffs leave to amend to (1) clarify the factual bases of

3  certain claims and (2) plead facts demonstrating that their claims

4  for fraud and negligent misrepresentation were timely.

5      Plaintiffs filed the FAC on June 24, 2004.  Doc #33.  The

6  FAC is currently the operative complaint in this action.  The FAC

7  asserts five causes of action:  (1) breach of contract, (2) fraud,

8  (3) negligent misrepresentation, (4) breach of the covenant of good

9  faith and fair dealing and (5) accounting.  Fresenius and SRC both

10  filed individual motions to dismiss a large portion of the FAC.

11  Docs ##48, 58.  The two motions, however, substantially overlap and

12  thus the court will treat these motions together.  Defendants,

13  again, base the majority of their motion to dismiss on statute of

14  limitations grounds.  Additionally defendants assert that several

15  of the FAC's claims should be dismissed for substantive

16  deficiencies.  Plaintiffs' opposition, argues that (1) all claims

17  asserted in the FAC are timely and substantively sufficient and (2)

18  even if some claims are untimely, defendants are estopped from

19  relying on the statute of limitations.  Doc #67.  Additionally,

20  defendants request the court to strike ¶¶46-48 of the FAC.  Doc

21  #43.

22

23                              II

24                              A

25      Under FRCP 12(b)(6), dismissal is proper if the complaint

26  fails "to state a claim upon which relief can be granted."  The

27  court must accept the factual allegations as true and construe them

28  in the light most favorable to the plaintiff.  <u>Broam v Bogan</u>, 320

                              3

United States District Court

For the Northern District of California

F3d 1023, 1028 (9th Cir 2003).  Although a plaintiff is not held to a "heightened pleading standard," the plaintiff must provide more than mere "conclusory allegations."  <u>Swierkiewicz v Sorema NA</u>, 534 US 506, 515 (2002) (rejecting heightened pleading standards); <u>Schmier v United States Court of Appeals for the Ninth Circuit</u>, 279 F3d 817, 820 (9th Cir 2002) (rejecting conclusory allegations).  A motion to dismiss must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Conley v Gibson</u>, 355 US 41, 45-46 (1957).

If a claim is barred by the applicable statute of limitations, dismissal pursuant to FRCP 12(b)(6) is appropriate.  <u>Morales v City of Los Angeles</u>, 214 F3d 1151, 1153 (9th Cir 2000).  "A motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled."  <u>Supermail Cargo, Inc v United States of America</u>, 68 F3d 1204, 1206 (9th Cir 1995) (citation and internal quotation marks omitted).  "In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.  Id at 1207.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  <u>Hal Roach Studios, Inc v Richard Feiner & Co</u>, 896 F2d 1542, 1555 n19 (9th Cir 1990).  The court, however, may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the

**United States District Court**

For the Northern District of California

pleading." See <u>Lapidus v Hecht</u>, 232 F3d 679, 682 (9th Cir 2000) (quotation marks omitted).

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." <u>Lopez v Smith</u>, 203 F3d 1122, 1127 (9th Cir 2000). The district court has broad discretion, however, to deny leave to amend after the first amendment of the complaint. See <u>Wagh v Metris Direct, Inc</u>, 348 F3d 1102, 1111 (9th Cir 2003).

B

Generally, a cause of action accrues "upon the occurrence of the last element essential to the cause of action." <u>Howard Jarvis Taxpayers Ass'n v City of La Habra</u>, 25 Cal 4th 809, 815 (2001).

In this case, plaintiffs' original complaint was filed on September 15, 2003. Doc #1. Defendants concede that they entered into tolling agreements with plaintiffs that tolled the statute of limitations from March 1, 2003, to September 15, 2003. Doc #7 at 5. Accordingly, the court counts back from March 1, 2003, to determine which claims, if any, in the FAC are barred by the relevant statutes of limitations.

III

*Breach of Contract*

The FAC asserts that defendants breached the Agreement by (1) failing to use their best efforts to maximize revenues in the Homecare and Diagnostic segments, (2) failing to implement the

5

Employee Bonus Plan and (3) using a corporate management fee in determining monies payable under Appendix A.  FAC at 14, ¶55.  The statute of limitations for a breach of contract claim in California is four years.  Cal Code Civ Pro § 337.  Accordingly, absent tolling, the statute of limitations bars any causes of action accruing before March 1, 1999.

A

In the court's June 1, 2004, order, the court held that the Agreement was severable insofar as it related to plaintiffs' Contingent Payment Rights because the Continent Payments were scheduled to be paid out annually from 1998 through 2002.  Doc #31 at 7-8.  Only the 1999 - 2002 payouts (the timely claims) are alleged in the FAC and defendants do not seek to have those claims dismissed.

B

Next, plaintiffs assert that each time defendants calculated the annual payments due under the Contingent Payment Rights Plan, they "subtracted an unauthorized fee, called at various points a 'management fee' or 'corporate management fee.'"  FAC at 12, ¶42.  Each subtraction is severable and thus the FAC, which alleges that the unauthorized fee was subtracted from the 1999 - 2002 annual calculations, is timely.

Anticipating the court's reasoning regarding the annual payments, defendants also another ground for dismissal.  In the FAC, plaintiffs contend that "there [is] no mention of a management fee in Appendix A."  Doc #67 at 5.  Defendants argue that all

6

United States District Court

For the Northern District of California

claims based upon the allegedly unauthorized corporate management fee should be dismissed because the language of Appendix A "specifically allows that 'overhead costs and other indirect costs will be allocated in accordance with [defendants'] customary accounting practices.'"  Doc #48 (Mot Dismiss) at 15 (quoting Appendix A, Part I(A)).  This passage, according to defendants, clearly authorizes the subtraction of a corporate management fee. Defendants want the court to determine that there is no genuine issue of material fact regarding the language of Appendix A, its meaning and what sort of fee was actually charged to plaintiffs.

In short, defendants seek judgment as a matter of law. Such a determination may be appropriate if there is no triable issue of fact allowing for summary judgment, but it is not grounds for dismissal under Rule 12(b)(6).  See Jacobson v Hughes Aircraft, 105 F3d 1288, 1292 (9th Cir 1997) ("[A] court's role at the 12(b)(6) stage is not to decide winners or losers or evaluate the strength or weakness of claims. * * *.  We must accept as true all allegations in the complaint and decide only whether plaintiff has advanced potentially viable claims") (emphases in original)).


C

The final breach of contract claim in the FAC, the claim relating to defendants' failure to implement the Employee Bonus Plan, presents a closer question than the previous contract claims. In the original complaint, plaintiffs made only a conclusory reference to defendants' obligation to implement an Employment Bonus Plan and no mention at all of when defendants allegedly breached this portion of the Agreement or when plaintiffs

discovered such breach.  Accordingly, the court dismissed this claim without prejudice to allow plaintiffs to include allegations concerning these critical issues.  Doc #31 at 14.

Addressing the issues raised by the court's June 1, 2004, order, plaintiffs state that

> [i]n 1998 and 1999, when plaintiffs questioned defendants' officers whether a plan would be implemented, such officers assured plaintiffs that such an employee bonus plan would be implemented promptly.  It was not until after 2000 that plaintiffs learned that no employee bonus plan had been or would be implemented.
> Id at ¶45.

According to the FAC, the breach occurred sometime in 1998 or 1999.  Clearly, these dates present a problem for plaintiffs.

"The cause of action for breach of contract ordinarily accrues at the time of the <u>breach</u>, and the statute begins to run at that time regardless of whether any damage is apparent or whether the injured party is aware of his right to sue."  Witkin, B E 3 <u>California Procedure</u> § 486 (Bancroft-Whitney, 4th ed 1996) (emphasis in original).

Essentially recognizing that defendants have a meritorious statute of limitations defense, plaintiffs argue that defendants are estopped from relying on it.  Doc #71 at 6.  Specifically, plaintiffs assert that the misrepresentations of defendants' officers regarding implementation of the Employee Bonus Plan induced plaintiffs not to file a breach of contract suit.  Id at 7 (stating that plaintiffs "questioned defendants within a reasonable time regarding the establishment of an employee bonus plan, and were assured it was being implemented.").

"A defendant will be estopped to invoke the statute of

United States District Court

For the Northern District of California

limitations where there has been some conduct by defendant, relied upon by the plaintiff, which induces the belated filing of the action." Shaffer v Debbas, 17 Cal App 4th 33, 43 (1993) (citation and internal quotation marks omitted). "'Whether an estoppel exists – whether the acts, representations or conduct lulled a party into a sense of security * * * and whether the party relied thereon to his prejudice – is a questions of fact and not of law.'" Id at 43 (quoting County of Santa Clara v Vargas, 71 Cal App 3d 510, 524 (1977)). Accordingly, resolution of the applicability of equitable estoppel should be postponed until, at least, the summary judgment phase of litigation. See Supermail Cargo, 68 F3d at 1206 ("Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it is not generally amenable to resolution on a 12(b)(6) motion.") (citation omitted).

Accepting as true all allegations in the complaint (as the court is required to do), plaintiffs have advanced a potentially viable claim and the court cannot say beyond doubt that plaintiffs can prove no set of facts that would establish that the equitable estoppel doctrine applies.

Finally, defendants assert that even if the equitable estoppel defense is potentially applicable to this case, plaintiffs have waived this defense by failing "specifically" to "plead" estoppel as an element of their breach of contract claim. Doc # 71 at 6. Upon review of California case law, it appears defendants are correct that California procedure requires a plaintiff specifically to plead estoppel in the complaint. Estate of Pieper v McCormick, 224 Cal App 2d 670, 692 (1964). In diversity cases, however, this court applies federal procedure, not California

United States District Court

For the Northern District of California

procedure.  Hanna v Plummer, 380 US 460 (1965).  Nothing in FRCP 8(a) requires plaintiffs specifically to plead estoppel. Defendants have pointed the court to no federal case law, and the court could find none, holding that plaintiffs are required specifically to plead the defense of equitable estoppel.

Accordingly, defendants' motions to dismiss plaintiffs' breach of contract claims are DENIED.

IV

*Breach of the Covenant of Good Faith and Fair Dealing*

The FAC asserts that defendants breached the implied covenant of good faith and fair dealing by failing to (1) implement the Employee Bonus Plan and (2) use their best efforts to maximize the revenues in the Homecare and Diagnostic segments.  FAC at 17, ¶72.  The original complaint asserted this same claim based upon the same alleged nonfeasance by defendants.  Doc #1 at 15, ¶70. Plaintiffs' opposition to the first motion to dismiss, however, characterized this claim as a claim for "tortious breach of contract."  Doc #25 at 10.

In its June 1, 2004, order, the court explained that claims for tortious breach of contract "'generally occur[] outside the commercial context' and involve 'intentionally injurious activities against vulnerable parties.'"  Doc #31 at 23 (quoting Freeman & Mills, Inc v Belcher Oil, Co, 11 Cal 4th 85, 104 (1995) (Mosk, J, concurring and dissenting)).  The court's previous order dismissed this claim without prejudice so that plaintiffs could allege additional facts that would take their claim out of the commercial context and demonstrate that plaintiffs did not possess

United States District Court

For the Northern District of California

1    equal bargaining power.  Doc #31 at 24.

2         The FAC, while realleging a claim for breach of the

3    implied covenant of good faith and fair dealing, contains no

4    allegations concerning the commercial context of the merger or

5    plaintiffs' bargaining power.  Accordingly, defendants state that

6    this cause of action must again be dismissed, but this time with

7    prejudice.  Doc #71 (Def Reply) at 1.  The court agrees with

8    defendants insofar as plaintiffs' claim for breach of the covenant

9    of good faith and fair dealing pleads a <u>tort</u> cause of action.

10        Plaintiffs, however, state for the first time that they

11   seek to recover in <u>contract</u> for defendants' alleged breach of the

12   duty of good faith and fair dealing.  Doc #71 at 11-12.  California

13   law gives plaintiffs the right to pursue this cause of action under

14   a tort <u>or</u> contract theory.  See B E Witkin, 1 <u>Summary of California</u>

15   <u>Law</u> § 743 (Bancroft-Whitney, 9th ed 1987) ("Breach of the [implied]

16   covenant [of good faith and fair dealing] gives rise to either a

17   contract action * * * or a tort action."); <u>Pasadena Live, LLC v</u>

18   <u>City of Pasadena</u>, 114 Cal App 4th 1089, 1090 (2004) ("the alleged

19   breach of the covenant of good faith and fair dealing constitutes a

20   breach of <u>contract</u> for which [plaintiff] may recover damages")

21   (emphasis added).

22        Recognizing this distinction exists, defendants argue

23   that although plaintiffs seek to recover in contract, they are

24   still required to plead facts demonstrating that the merger

25   transaction was not "within the commercial context and involved

26   parties of involved parties of [un]equal bargaining power."  Doc

27   #71 at 11.  The court disagrees.  Neither Witkin nor the <u>Pasadena</u>

28   <u>Live</u> court mention any "special" context required to bring a

11

<u>contract</u> action for breach of the covenant.  In fact, the parties

in <u>Pasadena Live</u> clearly had equal bargaining power and the

transaction was commercial.  Moreover, defendants cite no case law

imposing such contextual limitations on contract actions for breach

of the covenant.

        Defendants' motions to dismiss plaintiffs' causes of

action for breach of the implied covenant of good faith and fair

dealing are thus DENIED.

## V

### *Fraud*

        The FAC states that:

> [d]efendants, and each of them, represented and
> warranted to [p]laintiffs that: (a) they would
> implement the Employee Bonus Plan, (b)use their best
> efforts to maximize the revenue for the Homecare
> segment, (c) use their best efforts to maximize the
> revenues for the Diagnostic segment and (d) [not] use
> a 'corporate management fee' in determining monies
> payable under Appendix A.
> Doc #33 at 15, ¶60

Moreover, "at the time defendants made these representations and

warranties to plaintiffs [i e, at the signing of the Agreement],

defendants had no intention of honoring them."  Id, ¶61.  Rather,

defendants

> intended: (a) not to implement the Employee Bonus Plan; (b)
> not to use their best efforts to maximize the revenue for
> the Homecare segment; (c) not to use their best efforts to
> maximize the revenue for the Diagnostics segment; and (d)
> improperly to use a 'corporate management fee' in
> determining monies payable under Appendix A.

Based upon these alleged broken promises, plaintiffs have brought

four fraud claims.  The state of limitations for a fraud claim is

three years.  Cal Civ Pro § 338(d).  Accordingly, any fraud claims

United States District Court

For the Northern District of California

1  that accrued prior to March 1, 2000, are barred by the statute of

2  limitations.

3          Causes of action for fraud do not accrue "until the

4  discovery, by the aggrieved party, of the facts constituting the

5  fraud."  Cal Code Civ Pro § 338(d).  The period of limitations

6  "begin[s] to run when the plaintiff has a 'suspicion of

7  wrongdoing'; in other words, when he or she has notice of

8  information or circumstances to put a reasonable person on

9  inquiry."  Brandon G v Gray, 111 Cal App 4th 29, 35 (2003) (quoting

10 Jolly v Eli Lilly & Co, 44 Cal 3d 1103 (1988)).

11         In its order of June 1, 2004, the court stated that "if

12 the complaint is brought more than three years after the fraud is

13 alleged to have occurred, a 'plaintiff has the burden of pleading

14 and proving that he did not make the discovery until within three

15 years prior to the filing of the complaint.'"  Doc #31 at 17

16 (quoting Samuels v Mix, 22 Cal 4th 1, 14 (1999) (emphasis added).

17 In their opposition to defendants' first motion to dismiss,

18 plaintiffs agreed that "they had not pled the reasons why the

19 alleged fraud was not discovered before March 1, 2000."  Doc #31 at

20 17 (emphasis added).  Accordingly, the court dismissed the fraud

21 claims without prejudice so plaintiffs could remedy this alleged

22 "pleading" defect.

23         Upon review, however, the court believes it misapplied

24 the law regarding pleading in a diversity case.

25         The manner of pleading in the federal courts are
           governed by the [FRCP] regardless of the source of
26         substantive law to be applied in the particular
           action * * *.  Since the Supreme Court's decision in
27         Hanna v Plummer, it can no longer be doubted that
           the rules regarding that standard of specificity to
28         be applied to federal pleadings * * * are all

13

> governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting.
> 5 Wright, Charles A, et al, <u>Federal Practice and Procedure</u> §1204 (Thomson West, 3d ed 2004).

See also <u>Tango Music, LLC v Deadquick Music, Inc</u>, 2001 US Dist LEXIS 11669, *15 (ND Ill 2001) (stating that federal pleading governs in diversity cases based upon state substantive law). Accordingly, the court erred in dismissing plaintiffs' fraud claims and ordering them to amend and "plead" the reasons why they had not discovered the fraud prior to March 1, 2000.  Such pleading requirements are imposed under California procedure, not the FRCP.

The only FRCP applicable to plaintiffs' claims for fraud is FRCP 9(b) which demands that "all averments of fraud * * * [be pled] with particularity."  "Rule 9(b) requires particularity as to the circumstances of fraud – this requires pleading facts that by any definition are 'evidentiary':  time, place, persons, statements made, explanation of why or how such statements were false or misleading."  <u>In re Glenfeld, Inc Securities Litigation</u>, 42 F3d 1541, 1547n7 (9th Cir 1994).

The FAC is clear as to the time (May 1997), place, statements made (the express provisions of the Agreement), persons (Fresenius and SRC) and why these provisions were false (defendants did not intend to follow through on any of them).  Hence, the requirements of Rule 9(b) are met.  Defendants, however, still challenge the timeliness of plaintiffs' fraud claims.

## A

Plaintiffs' first fraud claim is that defendants intended

14

United States District Court

For the Northern District of California

"not to implement the Employee Bonus Plan" at the time they promised to do so.  FAC at 15, ¶61.  It is clear that the statute of limitations on this fraud claim began to run long before March 1, 2000.  Plaintiffs state in their complaint that in 1998 and 1999, plaintiffs repeatedly inquired of defendants when (and whether) an Employee Bonus Plan would be implemented.  Id at 12, ¶45.  This questioning by plaintiffs undoubtedly demonstrates that plaintiffs, as early as 1998, had a "suspicion of wrongdoing" sufficient to begin the running of the statute of limitations.

Plaintiffs, however, counter that defendants are equitably estopped from relying on the statute of limitations: "When plaintiffs questioned defendants' officers whether a plan would be implemented, such officers assured plaintiffs that such an Employee Bonus Plan would be implemented promptly."  FAC at 12, ¶45, Doc #71 at 8-9.  Whether these alleged statements actually occurred or whether plaintiffs reasonably relied upon them to their detriment is a question best left for summary judgment.  <u>Supermail</u>, 68 F3d at 1206.

**B**

Next, plaintiffs assert that defendants intended "not to use their best efforts to maximize the revenue for the Homecare segment" and the "Diagnostics segment" at the time they promised to do so.  FAC at 15, ¶61.  Plaintiffs further allege that "immediately after the Merger, defendants requested that plaintiffs not involve themselves with the Homecare segment."  Id at ¶37.  Moreover, plaintiffs allege that "[o]n August 5, 1998, Fresenius issued a press release indicating that, during the last fiscal

15

United States District Court

For the Northern District of California

quarter, Fresenius completely divested its Homecare and Diagnostic businesses."  Id at ¶39.

If plaintiffs received notice in August 1998 that defendants completely divested themselves of the Homecare and Diagnostics business segments, then plaintiffs' cause of action for fraud would, as a matter of law, have accrued at that time.  That defendants completely divested two of the three business segments upon which plaintiffs' contingent payment rights depended would cause a reasonable person to suspect that defendants might have made fraudulent promises at the time of the merger agreement. While plaintiffs do not explicitly state that they received notice of this August 5, 1998, press release, such notice can be inferred because plaintiffs tell the court that "after the sale of the Homecare business and Diagnostic business, officers of defendants * * * assured plaintiffs that the operations that had been sold were not the operations that were governed by Appendix A."  FAC at 11, ¶40.  Plaintiffs would not have questioned defendants regarding the sale of the two segments unless plaintiffs were on notice that the two segments had in fact been sold.

Accordingly, the statute of limitations on these two fraud claims began to run before March 1, 2000.  As with the first fraud claims, however, plaintiffs assert that defendants are equitably estopped from relying on the statute of limitations because they misrepresented to plaintiffs that the sale of the two segments did not affect the Contingent Payment Rights or Appendix A.  Hence, plaintiffs' fraud claims are <u>potentially</u> viable, making dismissal at this early point inappropriate.

United States District Court
For the Northern District of California

**C**

Plaintiffs' final fraud claim is that defendants intended "improperly to use a 'corporate management fee' in determining monies payable under Appendix A." FAC at 15, ¶61. It is undisputed that plaintiffs received the first annual calculation of the Contingent Payment Rights in late 1998. Moreover, this calculation included the subtraction of the allegedly unauthorized "corporate management fee." Accordingly, plaintiffs' fraud claim began to run well before March 1, 2000. Plaintiffs again seek to rely upon the doctrine of equitable estoppel to prevent their claim from being time barred. Plaintiffs assert that after the initial 1998 calculation containing the corporate management fee was received, defendants "fail[ed] to provide them with calculations for the years 1999 through 2002. It was not until plaintiffs' receipt of the earn-out calculations in 2003 that [plaintiffs] discovered" defendants' continued use of the corporate management fee to decrease plaintiffs' payment amounts. Doc #71 at 9.

This assertion (which the court will accept as true) serves to hurt plaintiffs more than it helps them. The statute of limitations began to run in 1998 when plaintiffs received the first earn out calculation of their contingent payment rights. Brandon G, 111 Cal App 4th at 35 (fraud action accrues when plaintiff has notice of information or circumstances to put a reasonable person on inquiry). That defendants followed up by not giving plaintiffs any calculation at all for the 1999 year would not lull plaintiffs into a sense of security. Rather, such behavior would make a reasonable person even more suspicious of defendants' wrongdoing. Accordingly, even taking all allegations as true, the assertions of

17

United States District Court

For the Northern District of California

1  the complaint would not permit plaintiffs to prove that the statute
2  was tolled.  The fraud claim, having been amended once and the pled
3  circumstances demonstrating that further amendment would be futile,
4  is dismissed with prejudice.

5

6

7                                    VI

8                       *Negligent Misrepresentation*

9          Based upon the same four express provisions underlying
10 the fraud and contract claims, plaintiffs assert a cause of action
11 for negligent misrepresentation.  FAC at 16, ¶67.  The statute of
12 limitations on a claim for negligent misrepresentation in
13 California is two years.  Cal Code Civ Pro § 339.  Accordingly, any
14 negligent misrepresentation claims that accrued prior to March 1,
15 2001, are time-barred.
16         For the same reasoning explained above in relation to the
17 fraud claims, plaintiffs' negligent misrepresentation claims based
18 upon defendants' failure to (1) implement the Employee Bonus Plan,
19 (2) use their best efforts to maximize profits in the Homecare
20 segment and (3) use their best efforts to maximize profits in the
21 Diagnostics segment are not time-barred <u>at this stage in the</u>
22 <u>proceedings</u>.  The claim premised on defendants' alleged improper
23 use of the management fee, however, is untimely and is dismissed
24 with prejudice.

25

26                                   VII

27                              *Accounting*

28         Defendants assert that the language of the Agreement

United States District Court

For the Northern District of California

provides for an accounting procedure and thus a judicial accounting is not available.  Plaintiffs, however, argue that in light of the alleged bad faith by defendants, an accounting of the financial records pursuant to the Agreement would be of little value.  Again, these _factual_ disputes are best left for a motion for summary judgment, not a Rule 12(b)(6).  Defendants' motions to dismiss plaintiffs' claim for an accounting are DENIED.

VIII

Finally, the court addresses defendants' motion to strike ¶¶46 - 48 of the FAC.  Doc #43.  Under FRCP 12(f), a court "may order stricken from any pleading * * * any redundant, immaterial, impertinent, or scandalous matter."  Immaterial matters have "no essential or important relationship to the claim for relief." Fantasy, Inc v Fogerty, 984 F2d 1524, 1527 (9th Cir 1993), rev'd on other grounds, 510 US 517, 534-35 (1994).  Impertinent matters consist of "statements that do not pertain, and are not necessary, to the issues in question."  Id.  Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Colaprico v Sun Microsystem, Inc, 758 F Supp 1335, 1339 (ND Cal 1991).  A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action.  Id.

The original complaint relied upon the allegations in ¶¶46 - 48 to state a claim for intentional misrepresentation relating to Fresenius stock.  Doc #1 at 10, ¶¶38 - 40.  The court, however, dismissed with prejudice plaintiffs' claims for

19

United States District Court

For the Northern District of California

1   intentional misrepresentation.  Doc #31 at 19-20.  While the FAC

2   does not reallege a claim for intentional misrepresentation, it

3   does reallege the facts upon which this claim was based.  Hence

4   these allegations are, according to defendants, immaterial and

5   impertinent.  Doc #43 at 4.  The court disagrees.

6        While plaintiffs are barred from pursuing claims based

7   upon these alleged misrepresentations, the court cannot conclude

8   that these facts will have no bearing on the subject of the

9   litigation.  Indeed, the alleged misrepresentations concerning the

10   Fresenius stock could serve to strengthen plaintiffs' fraud claims

11   by evidencing defendants' intent to defraud.  Accordingly, the

12   motion to strike is DENIED.

13

14                               IX

15        In sum, the court GRANTS IN PART defendants' motions to

16   dismiss (Docs ##48, 58) and DENIES the motion to strike (Doc #43).

17   Defendants are reminded that, pursuant to FRCP 12(a)(4)(A), their

18   responsive pleading must be served within ten days of the date of

19   this order.

20        To be clear, the court will summarize the claims

21   remaining in this case.  First, plaintiffs may proceed with their

22   claims for breach of contract.  Next, plaintiffs' claims for breach

23   of the covenant of good faith and fair dealing may proceed under a

24   contract theory.  Plaintiffs' claims for fraud and negligent

25   misrepresentation may proceed insofar as they are based upon

26   defendants' failure to (1) implement the Employee Bonus Plan and

27   (2) use their best efforts to maximize profits in the Homecare and

28   Diagnostic segments.  Finally, plaintiffs may proceed with their

1   claim for an accounting.

2           Additionally, the court ORDERS the parties to attend a

3   further case management conference on August 2, 2005, at 9:00 am,

4   or on another such date that the parties may arrange with each

5   other and the court's deputy, Cora Delfin.

6

7

8       IT IS SO ORDERED.

9

10  _____

11  VAUGHN R WALKER

12  United States District Chief Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California